**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

JOHN MAURICE MCDONALD,              )
                                    )
                Plaintiff,          )
                                    )
        vs.                         )       Civil Action No. 1:24-0091
                                    )
ROBERT MARSH, Deputy Secretary for Central  )    Magistrate Judge Patricia L. Dodge
Region, et al.,                     )
                                    )
                Defendants.         )

**<u>MEMORANDUM OPINION</u>**

Plaintiff John Maurice McDonald, a prisoner who is incarcerated by the Pennsylvania

Department of Corrections ("DOC") at the State Correctional Institution at Forest, Pennsylvania

("SCI Forest"), brings this pro se civil rights action under 42 U.S.C. § 1983.

Pending before the Court is a partial motion to dismiss the Second Amended Complaint

filed by Defendants. For the reasons that follow, the motion will be granted in part and denied

in part.[1]

I.      **Procedural History**

Plaintiff commenced this action by submitting a motion for leave to proceed in forma

pauperis on March 25, 2024. (ECF No. 1). After his motion was granted, the Complaint was

docketed. (ECF No. 5). Subject matter jurisdiction is based on the civil rights claims asserted,

28 U.S.C. §§ 1331, 1343.

---

[1] Now that that Plaintiff has identified the members of the 7-Man Extraction Team, all parties are named and all have consented to jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c) (ECF Nos. 14, 24, 50, 103). On May 11, 2026, Judge Baxter entered an order reassigning the case to the undersigned for all proceedings (ECF No. 104).

Plaintiff's original Complaint raised claims under the First and Eighth Amendments and violation of his right to equal protection under the Fourteenth Amendment. He named as Defendants Robert Marsh, the Deputy Secretary for the Central Region, and the following correctional defendants at SCI Forest: Superintendent Randy Irwin; Major Deal; Lieutenants Bell, Lowe, Jamie Walker and Steve Haggerty; Sergeant Lesko; and correctional officers ("COs") Smith, Moore, Spencer, Brown and Martt.[2] In addition, he referred to a "7-Man Extraction Team" with respect to an incident described below. Certain defendants have been added or removed from the case, as explained below.

An Amended Complaint was filed on December 6, 2024 (ECF No. 30). The Amended Complaint added Sgt. Frederickson as a defendant. It also removed Major Deal, Lt. Bell, Lt. Lowe, CO Smith, CO Moore and CO Spencer as defendants and they were dismissed.

Defendants filed a motion to dismiss the Amended Complaint (ECF No. 35) on December 20, 2024. On June 13, 2025, Judge Baxter filed a Memorandum Order (ECF No. 57) that adopted a Report and Recommendation filed on May 6, 2025 (ECF No. 54) and granted the motion in part and denied it in part. The Memorandum Order dismissed with prejudice all claims against the Defendants in their official capacities, dismissed without prejudice any conspiracy claims and dismissed without prejudice all claims against Defendants Brown and Martt.

Plaintiff subsequently submitted correspondence confirming that he did not intend to amend the Complaint, and a Case Management Order was entered (ECF No. 64). During discovery, Plaintiff filed a Second Amended Complaint (ECF No. 83) ("SAC") which identified the members of the group previously identified as the "7-Man Extraction Team" as Gigliotti, Baumcratz, Meier, Weaver, Moore, Fajibik, Anderson and Coulson. In addition, as Plaintiff

---

[2] Defendants identify this individual as "Marett."

explains in his response (ECF No. 95 at 2), he learned in discovery that Lt. Bell directed the 7-Man Extraction Team to spray his cell (he initially thought it was Lt. Haggerty), so Bell was added back in the case as a defendant. Other than these changes, however, the Second Amended Complaint includes the same factual allegations and asserts the same claims as the Amended Complaint that was the subject of Judge Baxter's June 13, 2025 Order.

On December 12, 2025, Defendants filed a partial motion to dismiss the Second Amended Complaint (ECF No. 87), which has been fully briefed (ECF Nos. 88, 95, 96).

## II.    Facts Alleged in Second Amended Complaint

The SAC proceeds in chronological order and recounts a number of incidents which are then related to one or more of his claims. They will be summarized as follows.

<u>Placement in JD-10 Cell</u>

On December 5, 2022, Plaintiff was removed from the strip cage in the J-Pod Restrictive Housing Unit ("RHU") and placed in cell JD-10. He immediately noticed that the cell was missing "life's basic necessities," which he describes as shelves, cabinets and a desk. He asked Lt. Walker and Sgt. Lesko to move him to another cell in the J-Unit. Walker responded that "We do not cater to Blacks, but strictly use this cell to house y'all Black inmates and we reserved the better cells for our White inmates." (SAC ¶¶ 5-6.)

Plaintiff immediately wrote a request slip to Superintendent Irwin to be moved to a different cell, but it was ignored and he was kept in this cell for ninety days. (*Id.* ¶¶ 7-8.) The lack of shelves, cabinets and a desk forced him to eat standing up or from unsanitary parts of the cells including the sink, the seat of the toilet or the edge of the shower. As a result, he accidentally dropped and knocked over many of his food trays and "had to raise a dispute" in order to receive another food tray, which was denied on multiple occasions. In addition, all of his personal

property had to be stored on the floor of his cell, including legal documents, resulting in water damage from the shower to these documents. And he had to read and write in "extremely uncomfortable positions that caused unnecessary and wantonly [sic] infliction of pain on various parts of [his] body." (*Id.* ¶¶ 9-10.) He claims that the cell conditions caused him neck and back pain, for which he was placed on medication. (*Id.* ¶ 16.)

Plaintiff further alleges that these deprivations prevented him from having "adequate durations of studying and litigation time" and that his space became a huge mess, "which made it harder for him to focus, find needed documents and keep track of the direction of his litigation" in his criminal case. (*Id.* ¶ 11.) In addition, his pens broke and he would poke holes in his documents because he was writing on the concrete floor. He "also had to use his only wall-mounted stool as a shelf for his hygiene products and drinking cup." (*Id.* ¶ 12.) On several occasions, he asked Defendants Walker, Haggerty, Lesko and Frederickson to be placed in a different cell, but these requests were all denied, as was his request for a record box. (*Id.* ¶ 13.) He notes that, at the end of June 2023 (well after his stay in the cell), the conditions were remedied. (*Id.* ¶ 14.)

On December 20, 2022, Lt. Walker, Superintendent Irwin and Regional Deputy Secretary Marsh were inspecting D-pod and Plaintiff informed Irwin and Marsh about the conditions he was living in as well as Walker's racial slur. Walker responded by saying "Why are you being a snitch? This is a sure way to lose all your property and not receive your mail and most likely why you probably have not been moved yet." (*Id.* ¶¶ 17-19.) Walker continued, "McDonald, you're not getting moved from out of this cell just cause you don't like the furnishing. So stop bitching and make the shit work." Irwin and Marsh agreed, saying "There you have it" and proceeded with their tour. (*Id.* ¶ 20.)

Thus, based on being placed in cell JD-10 for ninety days, Plaintiff raises claims under the Eighth Amendment for the conditions of confinement and under the equal protection clause because the placement was based on his race.

<u>OC Spray and Cell Extraction</u>

Plaintiff alleges that, on December 22, 2022, he expressed to CO Smith that he was seriously depressed because of the conditions of his confinement but Smith ignored him. Plaintiff covered his cell door windows in an attempt to gain the attention of someone other than Walker and Smith, specifically someone from psych, to help him with his deteriorating mental state caused by the conditions of his confinement. Instead, Lt. Bell later appeared at his cell door with the "7-Man Extraction Team." Bell authorized Fajibik to release three bursts of oleoresin capsicum ("OC") spray into his cell, which turned it into a "gas chamber." While he was choking from the gas, the 7-Man Extraction Team entered his cell and forced him against the shower wall. Baumcratz then punched him in the face, which caused his tooth to pierce his lip and he started to bleed. He was punched in the face again and then taken to the ground. His right arm was trapped under his body and the extraction team accused him of "refusing to cuff up while they maliciously and sadistically served Plaintiff with continuous punches, knees to his body, and mashing his face into the concrete floor." (*Id.* ¶¶ 21-27.)

Plaintiff said several times that he was not resisting but that his arm was trapped under his body. He alleges that the extraction team then intentionally attempted to break his pointer finger by bending it backwards, inflicting serious pain and swelling. (*Id.* ¶ 28.)

He was taken to an assessment area and then returned to cell JD-10, where he discovered that all of his personal property was missing and he was not even provided with a confiscation receipt. He was left with only a mattress and a jump suit. (*Id.* ¶ 29.)

As a result of the OC spray usage and the assault during the cell extraction, he raises claims of excessive force under the Eighth Amendment.

Follow-Up Concerning Plaintiff's Property

Plaintiff alleges that, on December 23, 2022, Superintendent Irwin was conducting a round of D-pod and he spoke to him about being placed on mail, cell cleaning, shower, property, toothbrush and bag meal restrictions the day before. Irwin responded, "I already warned you about your complaints. So I authorized my staff to place you on a bag meal and take your property. You'll be lucky to brush your teeth ever again, and I don't care if you ever get your property back." (*Id.* ¶ 30.)

A week later, Plaintiff inquired of a Pod Officer, CO Richards, about getting his property back. Richards said it was "missing or has been trashed because I cannot find it." In addition, he spoke to various defendants who were involved with the actual confiscation of his property: Lt. Walker, who stated "I don't care about your property. It's not important to me."; CO Brown, who said, "It's not my responsibility. Talk to Lt. Walker."; and CO Martt, who said, "I don't want to hear it. It's not my problem." The next day, while he was escorted by Sgt. Frederickson for a haircut, he inquired whether his property had been found and Frederickson replied, "No. this is what we do to pussies." (*Id.* ¶¶ 31-33.)

Plaintiff filed a grievance about the confiscation of his property. On February 21, 2023, Major Deal issued a revised response stating that all of his property had been returned. However, this was fraudulent, as demonstrated by a March 10, 2023 inventory sheet. (*Id.* ¶¶ 34-36.)

On January 20, 2023, Plaintiff became so depressed that he asked to speak with psych before returning his food tray. Instead, Lt. Walker spoke to him over the intercom and told him to stop filing grievances. When Plaintiff attempted to inquire further, Walker said "fuck you and

your property." (*Id.* ¶¶ 40-41.)

Based on these facts, Plaintiff raises a claim that, in retaliation for his complaints about his conditions of confinement, his property was confiscated, thereby violating his rights under the First Amendment.

### Further Acts of Retaliation by Lt. Walker

On July 14, 2023, Plaintiff was in the law library when Lt. Walker stated: "I want you to drop the law suit you filed against me and my team or get maced to your death from the other side of this wall. Is that understood?" CO Moore, who was present, asked Walker "Do y'all need help hanging this nigga?" and a subordinate who was also present responded, "Yea, the more da fun." Plaintiff pleaded for his life that he would drop a law suit, Case No. 310 M.D. 2023, and Walker responded, "Okay, but you better stand firm on your word or this is where ya black ass will die at (S.C.I. Forest)." (*Id.* ¶¶ 42-43.)[3]

Plaintiff filed a complaint with PREA Coordinator Welland, Security Captain Kundick and Superintendent Irwin. He also filed a complaint with the DOC's Central Office "Bureau of Special Investigation & Intelligence." (*Id.* ¶¶ 44-45.) His grievances were denied. (*Id.* ¶¶ 47-50.)

Plaintiff identifies the threats made by Lt. Walker as retaliation in violation of his rights under the First Amendment.

### III.    Standard of Review

"Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v.*

---

[3] The docket for this case in the Pennsylvania Commonwealth Court reveals that, on December 12, 2023, the court granted Plaintiff's motion to withdraw and discontinued the case. Named as defendants were Major Deal, Lt. Walker, Sgt. Frederickson and COs Brown and Martt.

*Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). "This requires a plaintiff to plead "sufficient factual matter to show that the claim is facially plausible," thus enabling "the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)). While the complaint "does not need detailed factual allegations ... a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

As noted by the Third Circuit in *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011), a 12(b)(6) inquiry includes identifying the elements of a claim, disregarding any allegations that are no more than conclusions and then reviewing the well-pleaded allegations of the complaint to evaluate whether the elements of the claim are sufficiently alleged. If a claim "is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (citation omitted).

When dismissing a civil rights case for failure to state a claim, a court typically must allow a plaintiff to amend a deficient complaint, irrespective of whether it is requested, unless doing so would be "inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007). "An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." *Alston v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000).

"A document filed *pro se* is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by

lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citation and quotation marks omitted); *see also Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) ("The obligation to liberally construe a pro se litigant's pleadings is well-established.").

In ruling on a Rule 12(b)(6) motion, courts generally consider only the complaint, attached exhibits and matters of public record. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). Plaintiff has attached to the SAC the grievances he filed and the responses he received from the institution. Thus, the Court could consider them in reviewing the motion to dismiss, if appropriate.

## IV.   Analysis

Plaintiff's claims are asserted under 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). *See also Baker*, 443 U.S. at 140; *Graham v. Connor*, 490 U.S. 386, 394 (1989).

The SAC alleges violations of the First Amendment, which, as relevant to this case, prohibits government officials from retaliating against a prisoner for exercising his right to free speech, including by filing grievances. Plaintiff also alleges violations of the Eighth Amendment, which prohibits "cruel and unusual punishment," including claims of excessive force and conditions of confinement. Plaintiff has also brought an equal protection claim under the Fourteenth Amendment, which prohibits a state actor from denying "to any person within its jurisdiction the equal protection of the laws."

In their motion, Defendants assert that all claims against them in their official capacities should be dismissed. In addition, they argue that the SAC fails to adequately plead the personal involvement of Defendants Gigliotti, Baumcratz, Meier, Weaver, Moore,[4] Fajibik, Anderson and Coulson, as well as Defendants Brown and Martt. Finally, they seek dismissal of any conspiracy claims pleaded in the SAC.

A.  Official Capacity Claims

As outlined above, when adjudicating the motion to dismiss the Amended Complaint, the Court dismissed all official capacity claims with prejudice. That ruling similarly applies to the additional parties added in the SAC, that is, Defendants Gigliotti, Baumcratz, Meier, Weaver, Moore, Fajibik, Anderson, Coulson, and Bell. To be clear, all official capacity claims against all Defendants are dismissed with prejudice.

B.  Conspiracy Claims

In its prior ruling, the Court also dismissed without prejudice the conspiracy claims and allowed Plaintiff to amend by July 15, 2025. Plaintiff stated that he did not intend to amend the Amended Complaint and did not do so by the deadline set by the Court. Therefore, to the extent that these claims are still asserted in the SAC, they are dismissed with prejudice.

This leaves the issue of the individual involvement of the newly added defendants.

C.  Individual Involvement

Defendants contend that defendants Gigliotti, Meier, Weaver, Moore, Anderson and Coulson should be dismissed because they are not alleged to have had any personal involvement

---

[4] The Court assumes that Defendants meant to include Defendant Moore in their arguments as he is identified in paragraph 23 of the SAC as a member of the extraction team. As a result, the Court will address the claims against Moore as well.

10

in the events pleaded in the SAC. They argue that, although they are identified as members of the 7-Man Extraction Team, Plaintiff has not alleged what actions each of them took.[5]

The Court of Appeals has held that individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "Government Officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207.

Plaintiff responds that he does not know which individual threw each punch and kick that he suffered when multiple officers assaulted him. He also notes that they wore masks and assaulted him when his face was mashed into the concrete floor, so he could not identify them. And indeed, to survive a motion to dismiss, he does not have to provide these details. *See Torres v. Allentown Police Dep't,* 2014 WL 4081477, at *6 (E.D. Pa. Aug. 18, 2014) ("At this pleading stage, plaintiff's complaint merely needs to set forth enough facts to raise a reasonable expectation that discovery will reveal evidence of the identity of the . . . other defendant officer(s) allegedly involved. If, after discovery, it is clear that the allegedly responsible officers' identities cannot be identified or if there is sufficient evidence that officers' use of force was reasonable, they may move for summary judgment.")

This case is in the discovery phase. If, after the completion of discovery, Defendants contend that the fully developed record demonstrates that Plaintiff cannot identify Defendants

---

[5] Defendants do not move to dismiss Baumcratz, who Plaintiff identifies as having punched him when he first entered the cell, or Fajibik, who Plaintiff identifies as having administered OC spray into his cell.

Gigliotti, Meier, Weaver, Moore, Anderson and/or Coulson as having any involvement in the incident, they may seek judgment in their favor in a dispositive motion.

Finally, Defendants argue that Plaintiff has not identified the involvement of Defendants Brown and Martt. Neither is named in the caption or body of the SAC as Defendants. While Brown and Martt are mentioned in passing as having confiscated his property on the orders of Lt. Walker (SAC ¶ 55), the same allegation was made in the Amended Complaint and was found to be insufficient to plead personal involvement. While the Court previously dismissed Brown and Martt as defendants without prejudice and with leave to amend, Plaintiff has not amended his allegations against them, nor does he now contend that they should be included as defendants here. Therefore, in order to avoid any confusion about the status of these Defendants, the motion to dismiss will be granted with prejudice.

## V.    Conclusion

For these reasons, the Partial Motion to Dismiss the Second Amended Complaint (ECF No. 87) will be granted in part as follows:

1. All official capacity claims, including those against Defendants Gigliotti, Meier, Weaver, Moore, Anderson,  Coulson, and Bell,  will be dismissed with prejudice;

2. All conspiracy claims that are asserted in the Second Amended Complaint will be dismissed with prejudice; and

3. Defendants Brown and Martt will be dismissed with prejudice.

Defendants' motion to dismiss Defendants Gigliotti, Meier, Weaver, Moore, Anderson and Coulson will be denied.

An appropriate order follows.

Dated: May 27, 2026                    /s/Patricia L. Dodge
                                       PATRICIA L. DODGE
                                       UNITED STATES MAGISTRATE JUDGE


cc:     JOHN MAURICE McDONALD
        MM-1780
        SCI FOREST
        P.O. Box 945
        286 Woodland Drive
        Marienville, PA 16239

13